Jeffrey DONJON, Appellant/Plaintiff,

v.

BLACK & DECKER (U.S.), INC.,
et al., Defendants,

and

AMF, Inc., Respondent/Defendant.

No. 59516.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 18, 1992.

Richard L. Hughes, Mogab & Hughes, St. Louis, for appellant/plaintiff.

Donald L. James, John Cunningham, Brown & James, P.C., St. Louis, for respondent/defendant.

CRANE, Judge.

Plaintiff Jeffrey Donjon brought an action for personal injuries he suffered while using a radial arm saw manufactured by defendant, AMF, Incorporated. He appeals from a judgment based on a jury verdict in favor of AMF. We affirm.

Donjon was hired by Central Hardware as a lumber salesman in September of 1985. As part of his duties at Central Hardware he occasionally cut lumber with a DeWalt 16 Radial Arm Saw manufactured by AMF in 1955. On October 31, 1985, Donjon seriously injured his hand while using the saw to cross cut two inches from a five foot long 2″ by 2″ piece of lumber. Donjon filed a civil action against AMF and a second defendant, Black & Decker, (U.S.), Inc., for personal injuries, asserting a failure to warn. On the second day of trial, Donjon dismissed his claim against Black & Decker and proceeded solely against AMF.

At trial Donjon testified that the accident occurred in the following manner. He laid the five foot long 2″ by 2″ board against the fence on the saw. He placed his left hand on the wood up against the fence. Donjon took the handle of the saw with his right hand and pulled it toward him. When the blade cut through the lumber, it pulled the lumber and his hand into a four inch gap in the fence and into the blade.

The fence or guide strip on a radial arm saw is a piece of wood with a space through it which allows the blade to pass through. When the radial arm saw was originally manufactured, the fence had a one-eighth inch gap for the blade to pass through. At the time of Donjon's accident, however, the fence had a four inch gap. The gap had been enlarged by replacement of the original fence with a two piece fence which had a four inch gap.

As relevant to this appeal, one of the central issues at trial was whether AMF should have placed a warning on the saw concerning the maximum width of the gap in the guide fence. Donjon's expert, James Briem, a metallurgical engineer, testified that plaintiff's hand was drawn into the blade because of the four inch gap in the fence. He testified to his opinion that a warning was needed to the effect that the opening in the guide strip should be some maximum dimension, but he had not formulated any language for the warning nor decided where it should be placed. Since the radial saw was used solely for cross cutting, Briem testified there was no advantage to Central Hardware in having a four inch rather than a one-eighth inch gap in the fence.

AMF's expert, Howard Hershock, a consultant on power tool safety, likewise testified that there is no benefit to an owner to have a four inch gap in the guide fence. He testified that AMF had no reason to anticipate that a subsequent owner of the saw would remove the fence containing a one-eighth inch gap and replace it with a two piece fence creating a four inch gap. Because AMF had no reason to anticipate such a modification, and had no other problems with, complaints about, or accidents concerning the fence, Hershock testified there was no reason to place a warning on the saw about the maximum allowable gap in the saw.

■ For his first point on appeal, Donjon asserts that the trial court erred in allowing Hershock to testify to his opinion that there was no need for warnings on the saw. Donjon argues that Hershock lacked formal education, training or experience in the area of warnings and was therefore unqualified to express an opinion on that issue.

■ Whether a witness' qualifications to state an opinion are sufficiently established rests largely in the discretion of the trial court and its ruling thereon will not be disturbed on appeal unless there is a clear showing of abuse. *Hord v. Morgan,* 769 S.W.2d 443, 448 (Mo.App.1989). Likewise the admission or exclusion of expert opinion testimony is a matter within the discretion of the trial court and we will not intervene with the exercise of that discretion will not be interfered with unless it plainly appears that it has been abused. *Spain v. Brown,* 811 S.W.2d 417, 423 (Mo. App.1991).

■ In a civil action "if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." § 490.065.1 RSMo 1986; *McCutcheon v. Cape Mobile Home Mart, Inc.,* 796 S.W.2d 901, 906 (Mo. App.1990); *Eichelberger v. Barnes Hospital,* 655 S.W.2d 699, 704 (Mo.App.1983). In order for a witness to be qualified as an expert, it must be shown that by reason of education or specialized experience the witness possesses superior knowledge respecting a subject about which persons having no particular training are incapable of forming an accurate opinion or of drawing correct conclusions. *City of Ballwin v. Hardcastle,* 765 S.W.2d 324, 326 (Mo.App. 1989). Substantial practical experience in the area in which the expert is testifying is a permissible source of expertise. *McCutcheon,* 796 S.W.2d at 906. If the witness

has some qualifications, the testimony may be permitted. *Hord,* 769 S.W.2d at 448. The extent of an expert's experience or training goes to the weight of his testimony and does not render the testimony incompetent. *In the Interest of C.L.M.,* 625 S.W.2d 613, 615 (Mo. banc 1981).

Hershock had previously testified in or investigated approximately one hundred and eighty incidents involving radial arm saws for AMF. He had a Bachelor of Science Degree in Industrial Arts and Science and a Master of Science Degree in Vocational Education. He took some of the same courses taken by engineering students while he was in college, including physics. Hershock taught industrial arts (shop class) to high school students for ten years before going to work for AMF. In 1955, Hershock became a sales representative for the DeWalt Division of AMF, which manufactured the saw which Donjon was using when he was injured. Hershock continued to function as a sales representative after the DeWalt Division of AMF was purchased by Black & Decker. In 1973, Hershock was appointed sales supervisor and was responsible for training and supervising less experienced salesmen. In 1980, he became a safety assurance manager for the DeWalt Division of Black & Decker. At the time of trial he was no longer an employee of that company but acted as a consultant. In his capacity as a consultant he investigates reported accidents involving DeWalt products, participates in periodic safety reviews, edits owner's manuals and conducts classes for new employees and distributors. He has designed warnings for radial arm saws like the one Donjon was using when he was injured. At the time of trial, Hershock had thirty five years experience with radial arm saws and had seen thousands of them in use.

Donjon argues that a witness may not testify to the necessity of a warning unless he is a trained psychologist or a human factors expert, citing *Tennis v. General Motors Corp.,* 625 S.W.2d 218 (Mo.App. 1981). We do not read *Tennis* to so hold. In *Tennis* the court held that the expert's education as an engineering psychologist and his experience in designing adequate warning systems were sufficient to permit his opinion that a specific warning label was inadequate due to its placement, color and language. *Id.* at 224–26. The court did not limit an expert's qualifications to those held by the expert witness in *Tennis.* Moreover, the expert opinion sought in *Tennis* concerned the sufficiency of a particular warning, not whether a warning should have been given at all. Finally, we note Donjon's own expert did not have the qualifications of the *Tennis* expert. The trial court did not abuse its discretion in finding Hershock qualified to testify as an expert. Point one is denied.

■ Donjon next argues that the trial court erred in allowing Hershock to testify to his opinion that warnings were generally ignored by users of products. Donjon argues that this was not a proper subject for expert opinion and invaded the province of the jury on an ultimate issue. At trial Donjon objected solely to Hershock's qualifications to testify, he did not object to the content of his testimony. If there is no objection at trial, none may be interposed on appeal. Rule 84.13(a); *Eichelberger,* 655 S.W.2d at 704. Since there was no objection at trial to the content of the expert testimony, this issue has not been preserved for our review. Point two is denied.

The judgment of the trial court is affirmed.

REINHARD, P.J., and GARY M. GAERTNER, J., concur.