GEORGE WEIS COMPANY, INC.,
Plaintiff/Appellant,

v.

Gary L. DWYER, Jerald J. Lander, George Cotton, Barbara Fraser, Joy Lieberman, Carl L. Seltzer, Defendants/Respondents.

No. 71192.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 7, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 24, 1997.

Application to Transfer Denied
Dec. 23, 1997.

Reinert & Duree, P.C., David M. Duree, St. Louis, for plaintiff/appellant.

Brown & James, P.C., James P. Reinert, St. Louis, for defendant/respondent.

PUDLOWSKI, Judge.

George Weis Company (Weis), appeals the trial court's denial of its motion for directed verdict and judgment notwithstanding the verdict (J.N.O.V.) asserting that it was entitled to judgment as a matter of law. Weis contends that the trial court erred by denying its motions because the respondent, University City School Board and Superintendent (School Board), violated its statutory duty to obtain a "good and sufficient surety" for a public construction project.

In November 1986, University City School District decided to expand two of the district's elementary schools. The School Board requested bids for the construction projects, requiring that each bid be secured by a bond as dictated by Section 107.170 RSMo (1986).[1] As a result of the bidding process, the School Board contracted with Wellington Building Group, Inc. (WBG) as the general contractor. WBG's bid indicated it had secured a bond with United Fidelity & Guaranty (UF & G).

During construction on the schools, WBG hired Weis, a drywall subcontractor, to work on a day-to-day basis. Upon completion of the Weis/WBG contract, Weis had been paid $36,779.48 in partial satisfaction of their contract, but $13,483.48 remained due. Having failed to be paid by WBG, Weis attempted to contact UF & G to secure payment. Weis was unable to obtain further remuneration from UF & G because it had ceased operations by that time. UF & G never registered with any state agency in Missouri nor its home state of Texas.

Subsequently, Weis filed suit against the School Board for failure to obtain a bond as required by Section 107.170 RSMo (1986),[2] and against WBG for breach of contract. The court dismissed the statutory cause of action against the School Board for failure to state a claim. On appeal from the dismissal, this Court reversed and remanded, holding School Board would be liable for failure to comply with Section 107.170 if a surety did not exist. *George Weis Company v. Dwyer*, 867 S.W.2d 520, 522 (Mo.App. E.D.1993); Section 107.170 RSMo (1986). On remand,

---

1. Section 107.170 RSMo (1986) provides:
   It is hereby made the duty of all officials, boards, commissions, commissioners, or agents of the state, or of any county, city, town, township, school, or road district in this state, in making contracts for public works of any kind to be performed for the state, or for such ... school ... district, to require every contractor for such work to furnish to ... such ... school ... district, .... a bond with good and sufficient sureties, in an amount fixed by said officials, boards, commissions, commissioners, or agents of the state, or of such ... school ... district, and such bond, among other conditions, shall be conditioned for the payment of any and all materials, ... consumed or used in connection with the construction of such work, ... and for all labor performed in such work whether by contractor or otherwise.

2. After the commencement of this case, in 1993, RSMo 107.170 was amended to read:
   Nothing in this section shall be construed to require a member of the school board of any public school district of this state to independently confirm the existence or solvency of any bonding company if a contractor represents to the member that the bonding company is solvent and that the representations made in the purported bond are true and correct. This subsection shall not relieve from any liability any school board member who has any actual knowledge of the insolvency of any bonding company, or any school board member who does not act in good faith in complying with the provisions of subsection 1 of this section.

the jury returned a verdict for the School Board, finding that a valid surety existed. The trial court denied Weis's motions for a directed verdict and judgment notwithstanding the verdict. Weis appeals.

"In reviewing a ruling on motions for directed verdict and judgment not withstanding the verdict, the evidence is viewed in the light most favorable to the verdict." *Duren v. Kunkel*, 814 S.W.2d 935, 936 (Mo. banc 1991). The prevailing party may benefit from any reasonable inference favorable to the verdict, and any evidence that does not favor the verdict must be disregarded. *Garrett v. Overland Garage and Parts, Inc.*, 882 S.W.2d 188, 190 (Mo.App. E.D.1994); *Lasky v. Union Elec. Co.* 936 S.W.2d 797, 801 (Mo. banc 1997). Unless there is a complete lack of evidence to support it, a jury verdict will not be overturned. *Miller v. Gillespie*, 853 S.W.2d 342, 344 (Mo.App. E.D.1993).

Weis argues the trial court erred by refusing to grant its motions for directed verdict and J.N.O.V. because its evidence shows that, as a matter of law, there was not a valid surety. However, applying the legal standard by disregarding the evidence contrary to the verdict, there is sufficient evidence to sustain the jury's finding for the School Board.

WBG and UF & G entered into a written agreement on July 14, 1988, purporting to make UF & G the surety for the School Board's building project. Evidence showed UF & G behaved as a normal bonding company in 1988. UF & G maintained an office in Dallas, Texas, and had paid out on one claim in 1986 in Kansas City from UF & G funds. The testimony of a former head of UF & G indicated that UF & G complied with formalities which tend to show that its bonds were typically backed by valid sureties. UF & G would obtain indemnity agreements in order to protect themselves and to protect individual sureties, and routinely require that individual sureties fill out government forms and submit to credit checks. Sureties would be required to list their spouses in the event that the surety did not properly pay a claim. UF & G would require that the contractor sign an indemnity agreement and WBG did so in this case. In addition, UF & G sometimes took the responsibility to act as surety on itself. UF & G did not issue a bond unless there were two individual sureties capable of backing the bond, or UF & G had sufficient funds to secure the bond. Finally, it was typical practice for the company to receive referrals from the National Association of Minority Contractors, which had procedures to confirm the viability of the bonding companies it recommended. The evidence was sufficient to infer that the WBG bond was a secured pledge.

The jury found that there was a valid bond entity, but even assuming the facts were not adequate for the jury to find the bonds sufficient, official immunity protects the board from liability. Official immunity protects public officers from liability for judicial or discretionary acts, but not ministerial duties. *Kanagawa v. State By and Through Freeman*, 685 S.W.2d 831, 836 (Mo. banc 1985), *Miller v. Smith*, 921 S.W.2d 39, 45 (Mo.App. W.D.1996). A discretionary act requires the public officer to exercise reason and judgment. *Kanagawa*, 685 S.W.2d at 836. On the other hand, a ministerial duty is clerical; an act the public officer must perform "upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Id.*

Obtaining a bond is a ministerial duty, and the School Board was under an absolute duty to require a bond as required by Section 107.170. *C.A. Burton Mach. Co. v. Ruth*, 194 Mo.App. 194, 186 S.W. 737, 737–738 (1916), Section 107.170 RSMo (1986). However, section 107.170 does not prescribe the means by which school board members determine whether a bond is "good and sufficient." Therefore, accepting a bond is a discretionary act, and the School Board is protected by the doctrine of official immunity. *S & W Cabinets, Inc. v. Consolidated School District No. 6 of Jefferson County (Fox)*, 901 S.W.2d 266, 269 (Mo.App. E.D. 1995). Point denied. Since School Board is not liable to Weis, it follows that Weis's claim for interest is denied.

■ Weis's final point asserts that the trial court erred in permitting expert testimony of attorney Michael James on an ultimate issue for the jury. Admission or exclusion of expert opinion testimony is a matter that is in the discretion of the trial court and will not be disturbed on appeal unless there has been an abuse of discretion. *Donjon v. Black & Decker, Inc.*, 825 S.W.2d 31, 32 (Mo.App. E.D.1992). During trial, School Board presented the testimony of James, who had been a lawyer for School Board. Counsel for School Board created a hypothetical that assumed, 1) UF & G had continued as a sole proprietorship after a dissolution by its partners, 2) UF & G was not registered with the Department of Insurance in Missouri, and 3) UF & G had valid individual sureties backing up a bond. School Board then asked James if UF & G and the individual sureties would be bound by the bond in Missouri. Weis objected because the question called for an opinion on a hypothetical set of facts, without tendering James as an expert witness.

After approaching the bench, the lawyers discussed the following out of the hearing of the jury.

Mr. James P. Reinert: The answer is simple, Judge. We were never asked. We were never sent any interrogatories asking who our experts were.

The Court: There was no request in the discovery to identify experts?

Mr. Duree: Not that I'm aware of. But I still have an objection, what is he being tendered as an expert of?

The Court: Well, you want to answer?

Mr. Reinert: My answer is basically the knowledge of the law dealing with companies in and out of the state with knowledge of contract law. Registered in Missouri doesn't mean if they have a valid claim that you get off the hook. Certainly, as a lawyer, as nothing else, he can do that with his experience. That goes to weight, not admissibility.

The Court: What was the final thing in your question?

\* \* \*

Mr. Duree: He's asking for opinions really which go to the ultimate issue that the jury is to decide, relies on expert witness to do that. If I understand correctly, he's being tendered as an expert on the law.

\* \* \*

Mr. Reinert: ... I'm asking him, based upon his experience, if an out-of-state company licensed and registered to do business can escape their obligation, if it were valid, based upon the failure to register. You're the one that brought it up about how it is not registered.

The court overruled Weis's objection.

■ The court did not abuse its discretion in permitting James to testify as an expert witness. In order for Weis to argue on appeal that the subject of James's testimony was improper, it must object on that basis during trial. An objection before a trial court may not be enlarged on appeal. *Hacker v. Quinn Concrete Co., Inc.*, 857 S.W.2d 402, 410 (Mo.App. W.D.1993). Weis's objection dealt with the improper tender of James as an expert witness, not that his testimony was improper. Therefore, Weis has not properly preserved the point for appeal.

■ Even if point were properly preserved, the trial court did not err in allowing James to testify because James's testimony did not go to an ultimate fact for the jury. While an expert opinion on the law is not admissible because such testimony encroaches on the function of the judge to instruct the jury, that is not the situation in the instant case. *Wulfing v. Kansas City Southern Inds.*, 842 S.W.2d 133, 153 (Mo.App. W.D. 1992). Rather, James's testimony dealt with whether a bond can be enforced in Missouri when the bonding company is not registered in Missouri. In *Wulfing*, the court allowed testimony of a lawyer witness who was qualified as an expert in SEC procedures and securities transactions. The court reasoned that expert testimony on complex procedural matters is permissible to allow the jury to evaluate the conduct of the parties, comparing such testimony to the testimony of medical experts. *Wulfing*, 842 S.W.2d at 153–154. James's testimony was offered to ex-

plain to the jury that, as a procedural matter, a bond may be enforced against an entity that is not registered in Missouri. *See S & W Cabinets,* 901 S.W.2d at 268. The testimony was probative to whether there was a valid bond, but did not conclude that the bond was valid. Therefore, the trial court did not commit an abuse of discretion in overruling Weis's objection. Point denied.

Judgment affirmed.

GRIMM, P.J., and GARY M. GAERTNER, J., concur.

